15-35050

## UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

THE LANCE AND LINDA NEIBAUER JOINT TRUST, by and through LANCE NEIBAUER, as trustee,

PLAINTIFF / APPELLEE

v.

MICHAEL J. KURGAN

DEFENDANT / APPELLANT

R E C E I V E D
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

AUG 2 6 2015

FILED_____
DOCKETED_____
DATE          INI⁻AL

On appeal from the United States District Court for the District of Oregon
(District Court Case No. 6:14-cv-01192-MC)

The Honorable Judge MICHAEL J. McSHANE
United States District Judge

MICHAEL J. KURGAN
Defendant / Appellant Pro Se
6538 Collins Avenue
Unit 288
Miami Beach, FL 33141
Phone 305 496-8555
E-Mail: mike@servicewing.com

# TABLE OF CONTENTS

PAGE

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . 10

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

I.   Basis of District Court Subject-Matter Jurisdiction . . . . . . . . . . . . . . .10

II.  Basis of Court of Appeals Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . .10

III. Filing Dates Establishing Timeliness . . . . . . . . . . . . . . . . . . . . . . . . . . .10

IV.  Appeal is from Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

STATEMENT OF ISSUES PRESENTED FOR REVIEW AND
STANDARDS OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

Nature of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Statement of Facts and Procedural History . . . . . . . . . . . . . . . . . . . . . .16

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

I.   THE LOWER COURT ERRED IN REFUSING TO DISMISS THE
     COMPLAINT FOR WANT OF PERSONAL JURISDICTION . . . . . . 24

     (1) Here, the extent to which Mr. Kurgan purposefully interjected
         himself into the forum was minimal, at best, and,
         at most, only ancillary to the causes of action . . . . . . . . . . . . . . . . .26

     (2) The burden caused by defending the claim
         in the forum was excessive . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

     (3) There were no conflicts with the sovereignty
         of the defendant's home state . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

# TABLE OF CONTENTS (cont.)

**PAGE**

(4) The forum state's interest in the dispute was nil . . . . . . . . . . . . . . . .28

(5) The most efficient resolution of the claim was not
achieved by trying the matter in Oregon . . . . . . . . . . . . . . . . . . . . . . 29

(6) The importance of the forum to the Trust was nil . . . . . . . . . . . . . .30

(7) Suitable alternative forums existed . . . . . . . . . . . . . . . . . . . . . . . . . 30

**II. AS A MATTER OF FACT AND LAW, THE COURT
ERRED IN DENYING MR. KURGAN'S MOTION
TO CHANGE VENUE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

**III. AS A MATTER OF FACT AND LAW, THE COURT
ERRED WHEN IT PREVENTED MR. KURGAN FROM
PROPOUNDING DISCOVERY AND THEN GRANTED
SUMMARY JUDGMENT IN FAVOR OF THE TRUST** . . . . . . . . . . . . .33

1. **Mr. Kurgan was denied the opportunity to prove that the lease was
extended during the time that the aircraft was not airworthy** . . . . . . . .37

2. **Mr. Kurgan was deprived of discovery necessary to
prove that the Trust concealed from him the true cost of repairs** . . . . . .37

3. **Mr. Kurgan was deprived of the opportunity to conduct discovery
to prove that the Trust marketed and sold the aircraft
during the Lease term** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39

4. **Mr. Kurgan was deprived of the discovery necessary to
prove that the parties entered into an agreement to extend
the lease in order to upgrade the autopilot and the avionics
on the aircraft, and facts necessary establish that the Trust
should have been estopped from asserting the expiration of the lease** . . 39

3

# TABLE OF CONTENTS (cont.)

PAGE

5. Mr. Kurgan was deprived of his right to prove
   that the pre-buy inspection was part of the Lease,
   and that, therefore, the option-to-purchase portion
   of the agreement was still in effect when the aircraft
   was sold to Enertron . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .41

6. Mr. Kurgan was deprived of discovery necessary to
   establish facts consistent with the email evidence that
   the Trust had concealed from him the existence of tax liens,
   and that the broker was instructed to keep this fact from him
   until after the lease was entered into . . . . . . . . . . . . . . . . . . . . . . . . . . .42

7. Mr. Kurgan's performance was excused by the fraud and
   prior breach by the Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

8. The Trust fraudulently demanded Mr. Kurgan
   wire $10,000.00 directly to the Trust, even though the
   Trust knew that the aircraft had already been sold to
   a third party buyer at the time of the demand . . . . . . . . . . . . . . . . . . .44

9. Discovery would have proven that the invoice Mr. Kurgan
   received was not for a completed inspection,
   but, rather, an estimate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .45

10. Had the court permitted discovery, the broker,
    Mr. Tim Brennan, would likely have testified as to
    his belief that Mr. Kurgan had the right to exercise
    his right to purchase the aircraft; that he had encouraged
    the Trust not to cheat Mr. Kurgan; that Mr. Kurgan did not
    interfere with the third party purchase; and as to when and how
    the aircraft was marketed during the term of the agreement . . . . . . . . 46

11. Proper discovery would have allowed Mr. Kurgan to
    establish that the term of the lease period, and the term
    of the option to purchase the aircraft as material disputed facts . . . . . 48

## TABLE OF CONTENTS (cont.)

**PAGE**

**IV. THE COURT ERRED IN REFUSING TO STRIKE THE TRUST'S CLAIM FOR INTERFERENCE, PURSUANT TO OREGON'S ANTI-SLAPP LEGISLATION, OR ALTERNATIVELY, ON THE BASIS THAT MR. KURGAN'S COMMUNICATIONS WERE PRIVILEGED** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

**V. THE COURT ERRED IN REFUSING TO FIND THAT THE TRUST BREACHED THE AGREEMENT BY ADVERTISING AND AGREEING TO SELL THE AIRPLANE DURING THE TERM OF THE LEASE** . . . . . . . . . . . . . .55

**VI. AS A MATTER OF FACT AND LAW, THE COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO STRIKE THE CLAIM FOR ATTORNEYS' FEES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .58

**VII. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

**STATEMENT OF RELATED CASES** . . . . . . . . . . . . . . . . . . . . . . . . . . .61

**CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. P. 32(A)(7)(C) AND CIRCUIT RULE 32-1** . . . . . . . . . . . . . . 62

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

# TABLE OF AUTHORITIES

**CASES**            **PAGES**

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.,*
368 F.3d 1174 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 25

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35, 55

*Boschetto v. Hansing,*
539 F.3d 1011 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*Brayton Purcell LLP v. Recordon & Recordon,*
606 F.3d 1124 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 25, 32

*Brown v. Gatti,*
99 P.3d 299 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .53, 54

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13, 33, 34

*Consolidated Freightways v. Eddy,*
513 P.2d 1161 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Davidson v. Wyatt,*
609 P.2d 1298 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Dow Chemical Co. v. Calderon,*
422 F.3d 827 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 25

*Duncan v. Atchison, T. & S.F.R. Co.,*
*72 F. 808 (9th Cir. 1896)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*Erlandson v. Pullen,*
608 P.2d 1169 (Or. Ct. App. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . .53

*Gray & Co. v. Firstenberg Mach. Co.,*
913 F.2d 758 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

## TABLE OF AUTHORITIES (cont.)

**CASES**                                                                    **PAGES**

*Hambleton Bros. Lumber Co. v. Balkin Enterprises Inc.,*
397 F.3d 1217 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 51, 59

*Held v. Mitsubishi Aircraft Int'l,*
672 F.Supp. 369 (D. Minn. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
466 U.S. 408, (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

*Hess v. Seeger,*
641 P. 2d 23 (Or. Ct. App. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40

*Holmes v. Morgan,*
498 P.2d 830 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40

*Horton v. Western Protector Insurance Co.,*
176 P.3d 419 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Immigrant Assistance Project v. INS,*
306 F.3d 842 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13, 32

*Irwin v. Ashurst,*
*74 P.2d 1127 (1938)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*Mantia v. Hanson*
79 P.3d 404 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*Matsushita v. Zenith Radio Corp.,*
*106 S.Ct. 1356 (1986)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*McKinney v. Cooper,*
*98 P.2d 711 (1940)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*McMillan v. Golden,*
497 P.2d 1166 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

7

# TABLE OF AUTHORITIES (cont.)

**CASES**                                                         **PAGES**

*Menken v. Emm,*
503 F.3d 1050 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 25

*Metabolife Int'l v. Wornick,*
264 F.3d 832 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35, 36

*Olsen v. Idaho State Bd. of Medicine,*
363 F.3d 916 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .49

*Panatronic USA v. AT&T Corp.,*
287 F.3d 840 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14, 34

*Pitts v. King,*
*15 P.2d 379 (1932)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*Roth v. Garcia Marquez*
942 F.2d 617 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25, 26

*Schwarzenegger v. Fred Martin Motor Co.,*
374 F.3d 797 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 25

*Sinatra v. National Enquirer, Inc.,*
854 F.2d 1191 (9th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Suckow Borax Mines Consol. v. Borax Consolidated,*
185 F.2d 196 (9th Cir. 1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .50

*Szajer v. City of Los Angeles,*
632 F.3d 607 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . .13, 15, 56

*United States v. $133,420.00 in U.S. Currency,*
672 F.3d 629 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 51, 59

*Universal Health Servs., Inc. v. Thompson,*
363 F.3d 1013 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 56

# TABLE OF AUTHORITIES (cont.)

**CASES**                                                             **PAGES**

*Walker v. Armco Steel Corp.,*
446 U.S. 740 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

**CODES**

28 U.S.C. § 1295 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C. § 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C. § 1404 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

28 U.S.C. § 1406 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

Fed. R. App. P. 28 A(4)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

Fed. R. Civ. P. 12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 33, 34, 48

UCC Section 2-719 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .57

Or. Rev. Stat. § 20.96 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .58

Or. Rev. Stat. § 21(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

Or. Rev. Stat. § 31.150 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .50

Cal. Civ. Proc. Code § 1021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

**TREATISES**

5 FEDERAL PRACTICE AND PROCEDURE §1226 . . . . . . . . . . . . . . . 50

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure rule 34 (a)(1), Defendant/Appellant in the instant matter, Mr. Michael Kurgan, hereby requests that oral argument be heard on the issues herein presented. Oral argument is necessary, due to the complexity and number of issues presented on appeal.

## STATEMENT OF JURISDICTION

### I.    Basis of District Court Subject-Matter Jurisdiction

This action is governed by 28 U.S.C. § 1332. The two requirements for federal courts to exercise diversity jurisdiction are met here:

(1)    Plaintiff/Appellee, (hereinafter, "Trust") (a resident of Oregon) and Defendant/Appellant, (hereinafter, "Mr. Kurgan") (a resident of Florida) are citizens of different states; and

(2)    The amount in controversy is an airplane and option to purchase the same, which are valued greater than $75,000, exclusive of interest and costs.

### II.    Basis of Court of Appeals Jurisdiction

This appeal is brought pursuant to 28 U.S.C. § 1295 and thus this Court has jurisdiction over the matter because this is an appeal of a final summary judgment of a District Court of the United States.

### III.    Filing Dates Establishing Timeliness

Pursuant to Federal Rule of Appellate Procedure rule 28 A(4)(C), this appeal is timely because:

1. The initial order granting the Trust's Summary Judgment occurred on 12/16/2014 (Docket Number 46);

2. The clerk mailed the Notice (Docket Number 47) on 12/17/2014;

3. The Trust filed a Bill of Costs 12/23/2014 (Docket Numbers 48 and 49);

4. The Trust then filed a Motion to Amend Judgment on 1/6/2015;

5. Mr. Kurgan then timely paid his fees and filed his initial notice of appeal on 1/15/2015 (Docket Numbers 51 and 52);

6. The Court, on 4/9/2015, granted the Order amending the Judgment (Docket Numbers 55 and 56);

7. The Clerk mailed the Notice (Docket Number 57) on 4/10/2015; and

8. The Amended Notice of Appeal to the 9th Circuit Court of Appeals from Judgment (Docket Numbers 46, 52, 55 and 56) was timely filed on 4/20/2015.

## IV. Appeal is from Summary Judgment

Appeal is from a Summary Judgment (Docket Number 46, 52, 55 and 56) in favor of the Trust, against Mr. Kurgan on the Complaint, and against Mr. Kurgan and in favor of the Trust on the Cross-Complaint.

/ / /

/ / /

/ / /

/ / /

## STATEMENT OF ISSUES PRESENTED FOR REVIEW AND
## STANDARDS OF REVIEW

The following are the issues that are presented for review, and their respective standards of review:

**(a)** Did the District Court in Oregon have *in personam* jurisdiction over Appellant, Mr. Michael Kurgan, or should his motion to dismiss for want of *in personam* jurisdiction have been granted rather than denied by the lower court, pursuant to Federal Rule of Civil Procedure rule 12(b) (2), because he did not possess the requisite minimum contacts with the State of Oregon?

The applicable standard of review pertaining to this issue is the de novo standard. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010); *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007); *Dow Chemical Co. v. Calderon*, 422 F.3d 827, 830 (9th Cir. 2005); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1177 (9th Cir. 2004).

**(b)** Was Oregon the proper venue for the instant matter, or should Mr. Kurgan's motion to dismiss for improper venue, pursuant to Federal Rule of Civil Procedure rule 12(b) (3) have been granted rather than denied by the lower court?

/ / /

/ / /

12

The applicable standard of review pertaining to this issue is <u>the de novo</u> <u>standard</u>.  *Brayton Purcell LLP*, 606 F.3d at 1127 (9th Cir. 2010); *Immigrant Assistance Project v. INS*, 306 F.3d 842, 868 (9th Cir. 2002).

**(c)** Even if this Court finds that *in personam* jurisdiction and venue were proper, did the lower court err, and, in the process, greatly prejudice Mr. Kurgan, when it granted Plaintiff/Respondent's Federal Rule of Civil Procedure rule 56 motion for summary judgment, despite having prevented him from doing *any* discovery which might have proved the existence of disputed material facts, in direct contravention of Federal Rule of Civil Procedure rule 56, and in contravention of the U.S. Supreme Court's holding in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[i]n our view, the plain language of Rule 56(c) mandates the entry of summary judgment, *after* adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . ." [emphasis added]), and thus, should the motion for summary judgment against Mr. Kurgan have been denied rather than granted by the lower court?

The applicable standard of review pertaining to motions for summary judgment is <u>the de novo standard</u>.  *Szajer v. City of Los Angeles*, 632 F.3d 607, 610 (9th Cir. 2011); *Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004).   Courts of the Ninth Circuit have held, however, that the grant of

motions for summary judgment based upon decisions regarding discovery are to be reviewed under <u>the abuse of discretion standard</u>. *See, e.g., Panatronic USA v. AT&T Corp.*, 287 F.3d 840, 846 (9th Cir. 2002) ("[a] district court abuses its discretion . . . if the movant diligently pursued its previous discovery opportunities, and if the movant can show how allowing additional discovery would have precluded summary judgment").

**(d)** Did the lower court err when it refused to grant Mr. Kurgan's motion to strike Plaintiff/Respondent's claim for tortious interference with contract, either pursuant to Oregon's "Anti-SLAPP" legislation, or because Mr. Kurgan's communications were privileged?

The applicable standard of review pertaining to this issue is <u>the abuse of discretion standard</u>. *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 637 (9th Cir. 2012); *Hambleton Bros. Lumber Co. v. Balkin Enterprises Inc.,* 397 F.3d 1217, 1224 n. 4 (9th Cir. 2005).

**(e)** Did the lower court err when it refused to find that the term of the applicable lease period, and the option-to-purchase clause of the lease which gives rise to the instant litigation were triable issues of material fact, and thus, should the motion for summary judgment against Mr. Kurgan have been denied rather than granted by the lower court?

The applicable standard of review pertaining to this issue is <u>the de novo</u> <u>standard</u>. *Szajer*, 632 F.3d at 610; *Universal Health Servs., Inc*, 363 F.3d at 1019.

**(f)** Did the lower court err when it refused to grant Mr. Kurgan's motion to strike Plaintiff/Respondent's claim for attorney's fees, where those fees pertained solely to Plaintiff/Respondent's having answered Mr. Kurgan's complaint in the Federal District Court in San Diego, California, and where the award was based upon the fact that Mr. Kurgan's complaint in that related matter was dismissed *solely* for lack of *in personam* jurisdiction?

The applicable standard of review pertaining to this issue is <u>the abuse of</u> <u>discretion standard</u>. *United States v. $133,420.00 in U.S. Currency*, 672 F.3d at 637; *Hambleton Bros. Lumber Co. v. Balkin Enterprises Inc.,* 397 F.3d at 1224 n. 4.

## STATEMENT OF THE CASE

**Nature of the Case:**

Mr. Kurgan leased an aircraft from the Plaintiff/Respondent in the instant matter (hereinafter, "the Trust"), with the exclusive option to purchase. (Exhibit No. 1 to Declaration of Lance Neibauer, at Trial Court Docket [hereinafter, "Docket"] No. 28) After Mr. Kurgan had expended considerable sums in addition to the normal cost of a typical lease of an aircraft, and in direct breach of the

exclusive right to purchase contained in the Lease, the Trust advertised and sold the aircraft to a third party. (Contract for Sale, Docket No. 28, Exh. 10) The Trust then sued Mr. Kurgan in Oregon state court, to compel him to pay for the pre-buy annual inspection, asserting a claim of interference with the sale to the third party buyer (hereinafter, "Enertron"), whereupon the case was removed federal court. (Docket No. 1) The lower court ruled in favor of the Trust on its motion for summary judgment, and this appeal timely followed. (Docket Nos. 45, 52, 58)

### Statement of Facts and Procedural History:

Mr. Kurgan entered into an agreement with the Trust, pertaining to an aircraft (hereinafter, "the aircraft"), consisting of a lease (hereinafter, "Lease"), with the option to purchase after flying the aircraft for six months. (Docket No. 28, Exh. No. 1) Material terms of the agreement included the fact that Mr. Kurgan's right to purchase the aircraft was exclusive during the entire term of the lease (and not merely the first six months, but also the fifteen months following December 12, 2013, while an addendum to the Lease was in effect). (Docket No. 28, Exhs. 1, 2) The addendum (hereinafter, "Addendum") stated that all other aspects of the original lease were to remain in full force and effect. (Docket No. 28, Exh. 2) The face of the sale contract between the Trust and the ultimate third-party buyer of the aircraft, Enertron, specifically states that the sale is effective as of February 10th, 2014. (Docket No. 28, Exh. 10, p. 1) This fact clearly shows

that the Trust marketed the aircraft for sale to a third party *during* the initial lease period to Mr. Kurgan, and that the Trust therefore entered into the sale agreement while Mr. Kurgan's purchase option was still in effect.

Even the District Court in California (where Mr. Kurgan had initially sued the Trust) recognized this to be a significant issue, and postulated that the Trust would be in breach when proven that the aircraft was advertised during this lease period. (Exhibit No. 2 to Declaration of Emily Teplin Fox, at Docket No. 24, p. 5, lns. 9-11 ["If that's true, it may well have been a violation of the lease, which stipulated that, during the entire six-month term, '*the Owner shall not engage any third party to Purchase the Aircraft.*' (Lease ¶ 5)"])

Mr. Kurgan refused to purchase the aircraft without a pre-purchase inspection, to which he was contractually entitled under the Lease. (Docket No. 28, Exh. 1, ¶ 6(a)) Mr. Kurgan was entitled to wait – and *did* wait – for the pre-buy inspection to be completed, before notifying the Trust of his intent to purchase the aircraft. (Docket No. 28, Exh. 1, ¶ 6(a)) Once the pre-purchase inspection was completed, Mr. Kurgan notified the Trust that he intended to purchase the aircraft. (Docket No. 28, Exh. 5) Even the District Court in California postulated that Mr. Kurgan's prior decision to return the aircraft was of little significance. "In response to the Neibauers' refusal to sell, Kurgan took the position that his right to buy the plane survived, and indeed was distinct from, the lease itself. If Kurgan is

right on this point, then his decision to return the plane and cancel his insurance on it has little significance." (Docket No. 24, Exh. 2, at p. 5, lns. 12-15)

The "hot section" of the aircraft required overhauling, and Mr. Kurgan worried that the engine suffered from what is known as a "hot start," which would have considerably reduced the value of the aircraft (i.e., its desirability). The parties had agreed upon a cap for the cost of the "hot section" inspection, to the tune of $30,000.00. (Docket No. 28, Exh. 1) If that amount were exceeded, Mr. Kurgan could and would have immediately cancelled his intent to purchase. (Docket No. 28, Exh. 1)

While the Trust told Mr. Kurgan that the "hot section" cost did not exceed the $30,000.00 cap, the true facts were that the cost of removal and installation were paid via credit card by the Trust, and were not invoiced, so that the Trust could claim that the cost never exceeded the cancellation price. (Exhibits in Support of Motion for Summary Judgment, at Docket No. 29, Exh. 28) This constituted fraudulent inducement, as Mr. Kurgan would otherwise have cancelled the agreement (Declaration of Michael Kurgan in Support of Motion for Summary Judgment, Docket No. 27, at ¶ 14), and would have saved himself a total of $100,546.83. (Docket No. 29, Exhs. 1, 4, 5, 7, 8, 9, 10, 16, 17; *see also* Docket No. 27, at ¶¶ 14, 85)

18

The parties had agreed to an Addendum, extending the Lease, and, with it, the option to purchase. (Docket No. 28, Exh. 2) Due to commercial impracticability, however, there was no modification of the aircraft, but the time to purchase was also extended, and the Trust was estopped from asserting any deadlines pursuant to the original lease term.

Mr. Kurgan agreed to pay for a necessary technical upgrade, and to extend the Lease for an additional fifteen months beyond March 20th, 2014, pursuant to the Addendum to the Lease. (Docket No. 28, Exhs. 1, 2) The Trust was responsible for the additional costs. (Docket No. 28, Exh. 1) The Addendum to the Lease nonetheless remained in effect, specifically including the option to purchase. (Docket No. 28, Exhs. 1, 2)

At the end of the "use period," under the Lease, Mr. Kurgan returned the aircraft to the Trust, but was still contractually obligated to pay for an annual inspection of the aircraft, which he regarded also as a form of "pre-buy" inspection, the results of which would inform his decision as to whether or not ultimately to purchase the aircraft. (Docket No. 28, Exh. 1) Thus, the end of the "use-period" did not signify the termination of the Lease (and, in any event, the Addendum had effectively extended the term of the Lease). (Docket No. 28, Exhs. 1, 2)

When Mr. Kurgan did decide to purchase the aircraft, and so notified the
Trust, however, he discovered that the Trust had sold the aircraft to a third-party
buyer (Enertron). Mr. Kurgan then attempted to assert his contractual right to
exercise the option to purchase, however, the Trust's sale of the aircraft to Enertron
did occur, and, following an attempt at negotiations with the Trust in an attempt to
receive compensation for the loss of the opportunity to purchase the aircraft, both
Mr. Kurgan and the Trust sued each other – in Federal District Court in San Diego
California, and in Oregon State Court, respectively – *each on the same exact day*.
(Exhibits 5, 7 to Declaration of Emily Teplin Fox, in Support of Opposition to
Defendant's Motion to Transfer Venue, at Docket No. 11)

Mr. Kurgan's suit in California was ultimately dismissed by the District
Court there, for lack of *in personam* jurisdiction. (Docket No. 24, Exh. 2) Mr.
Kurgan then had the Oregon State Court case against him removed to Federal
District Court in Oregon. (Docket No. 1) Mr. Kurgan challenged jurisdiction in
Oregon, on the basis of lack of minimum contacts, and additionally challenged
venue, and moved to strike various portions of the Trust's Complaint, all to no
avail. (Docket No. 15) Finally, each side moved for summary judgment against
the other, and, despite the fact that Mr. Kurgan had not had the opportunity to
conduct discovery which would have established the existence of triable issues of
material fact, the lower court granted the Trust's motion for summary judgment,

and awarded the Trust attorney's fees pertaining to its defense of the case that Mr. Kurgan had brought in California (*despite the fact that that case had not been ruled to have been "frivolous," nor had the Trust asked the California court for its attorneys' fees in the first place*).  (Docket Nos. 22, 23, 45)

Mr. Kurgan sought rescission of the agreement, and restitution of the contract amount.  Because of the conduct of the Trust in committing fraudulent acts, from inducement, to concealment of material facts, Mr. Kurgan claimed that he was entitled to recover $65,321.83 (after giving just offset for the reasonable rental value of the aircraft (Docket No. 29, Exh. 12), and punitive damages in an amount of three times the amount of compensatory damages awarded, in the sum of $195,965.49.  (Docket No. 27, at ¶¶ 85, 106)

## SUMMARY OF ARGUMENT

**(1)** Mr. Kurgan's motion to strike for lack of *in personam* jurisdiction should have been granted by the lower court.  Here (pursuant to the relevant analytical factors), there was no purposeful availment; the burden upon Mr. Kurgan was excessive; there are no conflicts of law; Oregon had no interest in adjudicating the dispute; the interests of the plaintiff could have been as easily satisfied elsewhere; and alternative forums existed.   Under the applicable analysis pertaining to motions to dismiss for lack of *in personam* jurisdiction, here, the lower court should have dismissed the matter.

**(2)** The interests of justice were not served by Mr. Kurgan's having to be haled into court in a state with which he has no connection, for a series of hearings designed for the administration of justice, when the court there had no personal jurisdiction over him. Moreover, the Trust would not have been prejudiced by a transfer of venue, and thus, the lower court should have granted Mr. Kurgan's motion to change venue.

**(3)** The lower court should not have granted the Trust's motion for summary judgment in the absence of Mr. Kurgan's having had any opportunity to conduct discovery which would have allowed him successfully to have opposed that motion. There were numerous depositions which Mr. Kurgan could have taken, had the lower court not precluded him from doing so, which would have established the existence of such issues. Under the applicable standard of review, the lower court abused its discretion when it granted the Trust's motion for summary judgment.

**(4)** The conduct complained of by the Trust in the First Cause of Action of the Complaint in the instant matter is that "Defendant wrongfully interfered with Trust's contract to sell the aircraft by improper means, including: (1) wrongfully asserting an option to purchase the aircraft after the option terminated; (2) threatening to file a frivolous lawsuit to assert an option to purchase the aircraft after the Lease and the option expired; (3) demanding payment when no money

was owed to defendant to avoid the improper claim to cloud title to the aircraft; and (4) asserting to the Federal Aviation Administration that the Lease and the Addendum to the Lease were in effect as of April 25, 2014, after the Lease and the Addendum had expired." (Docket No. 11, Exh. 5, at 5:7-14)

All comments made by Mr. Kurgan to Enertron, alerting that entity to the existence of the lawsuit that is now here on appeal, however, were absolutely privileged, and Mr. Kurgan was therefore properly to be considered immune from suit for tortious interference. Thus, pursuant ot Oregon law, the lower court should have granted Mr. Kurgan's motion to strike this cause of action from the Trust's Complaint.

(5) Instead of viewing the facts in the light most favorable to the non-moving party (Mr. Kurgan), the lower court accepted the Trust's argument that the date which the Trust and Enertron specifically put into the purchase agreement was a 'mistake,' and utterly ignored the fact that this was the second buyer for the aircraft during the term of the Lease. In so doing, the lower court mistakenly granted the Trust's motion for summary judgment.

(6) Here, the award of attorneys' fees to the Trust was based solely on the California District Court's dismissal of Mr. Kurgan's case agianst the Trust for lack of in personam jurisdiction. The Trust claimed attorney's fees solely in relation to that matter, however, that matter was dismissed solely on procedural

grounds, and not because the court there found the lawsuit to have been frivolous (which it did not). Additionally, there was no attorneys' fee provision in the contract, which both California and Oregon would have required. Thus, for the lower court to have denied Mr. Kurgan's motion to strike the Trust's claim for its attorney's fees for having had to defend itself in the California lawsuit was an abuse of discretion.

## ARGUMENT

## I.

## THE LOWER COURT ERRED IN REFUSING TO DISMISS THE COMPLAINT FOR WANT OF PERSONAL JURISDICTION

In the State of Oregon, in order to establish personal jurisdiction, a plaintiff must show that Oregon's long-arm statute confers personal jurisdiction over an out-of-state defendant, and that the exercise of jurisdiction by the Oregon court does not violate federal constitutional principles of due process. *See, e.g.*, *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) ("Oregon's long-arm statute confers jurisdiction to the extent permitted by due process"). Moreover, as the Court of Appeals for the Ninth Circuit has stated, "[f]or due process to be satisfied, a defendant must have minimum contacts with the forum

state such that the assertion of jurisdiction does not offend traditional notions of fair play and substantial justice." *Boschetto v. Hansing*, 539 F.3d 1011, 1021 (9th Cir. 2008) (quotations and citations omitted).

Due process in the context of specific personal jurisdiction is determined by using a three-part test: "1) the nonresident defendant must have purposefully availed himself of the privilege of conducting activities in the forum by some affirmative act or conduct; 2) plaintiff's claim must arise out of or result from the defendant's forum-related activities; and 3) exercise of jurisdiction must be reasonable." *Roth v. Garcia Marquez*, 942 F.2d 617, 620-21 (9th Cir. 1991).

The applicable standard of review pertaining to this issue is the de novo standard. *Brayton Purcell LLP*, 606 F.3d at 1127; *Menken*, 503 F.3d at 1056; *Dow Chemical Co.*, 422 F.3d at 830; *Schwarzenegger*, 374 F.3d at 800; *Action Embroidery Corp.*, 368 F.3d at 1177. Based upon that standard, Mr. Kurgan respectfully requests that this Court reverse the lower court's decision in the instant matter, and dismiss the matter for want of *in personam* jurisdiction.

Here, there was no purposeful availment. Mr. Kurgan spent only a single hour within the jurisdiction, picking up the aircraft, and that did not even occur in the same District as that in which this this Court sits. No negotiations occurred, in Oregon, and Mr. Kurgan had no direct contact with the Trust.

In determining whether the exercise of jurisdiction is reasonable, a court considers seven factors: 1) the extent of the defendant's purposeful interjection into the affairs of the forum state; 2) the burden on the defendant; 3) conflicts of law between the forum and the home jurisdiction of the defendant; 4) the interest of the forum in adjudicating the dispute; 5) the most efficient judicial resolution of the dispute; 6) the interest of the plaintiff in convenient and effective relief; and 7) the existence of an alternative forum. *See Roth*, 942 F.2d at 623; *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1198-99 (9th Cir.1988). Here, each of those factors clearly leads to the conclusion that the District Court in Oregon did not have jurisdiction over Mr. Kurgan.

**(1) Here, the extent to which Mr. Kurgan purposefully interjected himself into the forum was minimal, at best, and, at most, only ancillary to the causes of action.**

In the instant matter, the infinitesimally short visits that Mr. Kurgan made to the forum state (which, in total, probably amounted to less than 7 hours) did not amount to the kind of continuous and systematic contacts that would be required, before a court could exercise jurisdiction over a defendant.

In *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, (1984), the defendant had *far more* contacts with the forum jurisdiction than Mr. Kurgan had with Oregon in the instant litigation. *See id.* at 411, 416-417. And yet, there, the Supreme Court reversed the lower court's finding that it had jurisdiction over

the defendant, holding that "purchases and related trips, standing alone, are not a sufficient basis for a State's assertion of jurisdiction." *Id.* at 417. Here, there were no continuous or systematic ties with the forum jurisdiction, and the case should have been dismissed for lack of *in personam* jurisdiction.

Mr. Kurgan first discovered the aircraft through an advertisement placed on a website called Controller.Com, via the internet. (Docket No. 27, at ¶ 7) It appears from the ad seen by Mr. Kurgan that it was placed by the Trust's aircraft broker, Chess Aviation in Charleston, South Carolina. Mr. Kurgan saw the ad while in California. (Docket No. 27, at ¶ 8) The aircraft broker was not in Oregon, but in South Carolina. (Docket No. 27, at ¶¶ 7 - 9) Negotiations for the lease option occurred between Mr. Kurgan in California, and the broker in South Carolina. (Docket No. 27, at ¶¶ 9 - 12) The Lease, with the option to purchase, was prepared by the South Carolina broker. (Docket No. 27, at ¶¶ 11-12) The Lease was emailed to Mr. Kurgan, from South Carolina to California. (Docket No. 27, at ¶ 12) The funding and closing of escrow on the aircraft was held by an escrow agent in Oklahoma City, OK. (Docket No. 27, at ¶ 13) The rebuild that was performed on the hot section was not done in Oregon, and the removal and subsequent re-installation of the hot section in Oregon was free. (Docket No. 27, at ¶ 14) Payment for the rebuild of the hot section was tendered by Mr. Kurgan, in California, to the escrow agent, in Oklahoma City, OK. (Docket No. 27, at ¶ 13)

The alleged interference, if any occurred, was unrelated in any direct way to the state of Oregon. Thus, here, there simply was no continuous and systematic contact between Mr. Kurgan and the State of Oregon.

**(2)   The burden caused by defending the claim in the forum was excessive.**

Here, Mr. Kurgan has no ties, nor any business holdings (and not even an attorney) in Oregon. The time necessary to travel to and from the forum to defend a case there represented a hardship upon Mr. Kurgan's business, besides which, doing so was expensive. (Docket No. 27, at ¶ 64) Mr. Kurgan's responsibilities as CEO of his company, and the press of regular day-to-day business, severely limited his ability to travel, and thus to litigate this matter in this forum. (Docket No. 27, at ¶ 65) Mr. Kurgan simply has no ties whatsoever with Oregon, and it was unjust for him to have been haled into court there. (Docket No. 27, at ¶ 67)

**(3) There were no conflicts with the sovereignty of the defendant's home state.**

There are no conflicts with the sovereignty of the Defendant's home state. (Docket No. 27, at ¶ 68)

**(4)   The forum state's interest in the dispute was nil.**

Here, the State of Oregon simply has no interest in the dispute. (Docket No. 27, at ¶ 69) Even if taken as true, the conduct complained of in the form of a breach of any purported agreement to pay the bill for the final annual inspection occurred, if it occurred at all, in California, or South Carolina, or Oklahoma. The

broker is not in Oregon, but in South Carolina. (Docket No. 27, at ¶ 70) The aircraft lease with the option to purchase was prepared by the South Carolina broker. (Docket No. 27, at ¶ 71) The lease was emailed to Mr. Kurgan in California from South Carolina. (Docket No. 27, at ¶ 72) The funding and closing were held by an escrow agent in Oklahoma City, OK. (Docket No. 27, at ¶ 73) The payment for the final work would have been mailed to the escrow agent, had the Trust not already breached the agreement by failing to honor the lease option, and by failing to pay the taxes and the broker's commission. (Docket No. 27, at ¶ 74)

The claim of intentional interference is alleged by the Trust to have occurred when Mr. Kurgan sent the Lease to the FAA in Oklahoma, or when he emailed Enertron (from California to Arizona), notifying Enertron of the Lease. (Docket No. 27, at ¶ 75) The Trust itself chose to do business outside of the state, with individuals in California, South Carolina, Oklahoma, and Arizona. Thus, Oregon has no interest in the outcome of this litigation.

**(5) The most efficient resolution of the claim was not achieved by trying the matter in Oregon.**

The district court in California had no difficulty in finding that the Trust's contacts with California did not warrant the exercise of jurisdiction there, and certainly those contacts were more extensive than any that Mr. Kurgan had with the Oregon. (Docket No. 24, Exh. 2) The most efficient resolution of the claim

would be to litigate it where it belongs, and where it could have been brought, which would be in South Carolina, Oklahoma, Arizona, or in the place of Mr. Kurgan's residence, which is in the Southern District of Florida. Nothing that Mr. Kurgan did during his brief visits to the state of Oregon would warrant the State's involvement, and certainly the most efficient resolution of the claim would occur where the witnesses are located, or where the alleged cause of action occurred. In no case is Oregon included in this list.

**(6) The importance of the forum to the Trust was nil.**

As discussed, *supra*, the Trust chose to do business outside of the State of Oregon, and did so with individuals in California, South Carolina, Oklahoma, and Arizona. The Trust chose the broker from out of state. It chose to do business with a resident of Florida. It advertised nationally for a third party buyer, in addition to all of the other conduct listed in Mr. Kurgan's Declaration in Support of Motion for Summary Judgment. The forum is thus clearly unimportant to the Trust, in any material respect.

**(7) Suitable alternative forums existed.**

As already stated herein, the alternative forums include South Carolina (where the broker was located), Oklahoma (where the escrow agent was located), Arizona (where the third-party buyer, Enertron, is located), and the Southern District of Florida, where Mr. Kurgan resides. (Docket No. 27, at ¶ 83)

Given the foregoing analysis, and the fact that, in order to exercise general *in personam* jurisdiction over a party, the party's contacts with the forum state must be of a "continuous and systematic" nature, here, the District Court in Oregon should not have found that it had jurisdiction over Mr. Kurgan.

## II.

### AS A MATTER OF FACT AND LAW, THE COURT ERRED IN DENYING MR. KURGAN'S MOTION TO CHANGE VENUE

There are two main provisions under which a federal district court can transfer venue over a case to another federal district court. The first of those provisions is 28 U.S.C. § 1404(a), which is utilized in cases in which venue in the transferor court is proper, but "[f]or the convenience of parties and witnesses, and in the interest of justice," venue in another federal district is preferable, and it allows the district court in which the action was brought, in its discretion, to transfer the action "to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) The second of the venue transfer provisions is 28 U.S.C. § 1406(a), which is utilized when the plaintiff has "filed a case laying venue in the wrong division or district," and requires the district court in which venue is improper to either dismiss the action, "or if it be in the interest of justice,

transfer the case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

The applicable standard of review pertaining to this issue is the de novo standard. *Brayton Purcell LLP*, 606 F.3d at 1127; *Immigrant Assistance Project*, 306 F.3d at 868. Based upon that standard, Mr. Kurgan respectfully requests that this Court reverse the lower court's decision in the instant matter, and hold that this matter was not tried in a venue that was proper, given the facts.

Here, Mr. Kurgan moved to dismiss this action under 28 U.S.C. § 1406(a) because the interests of justice would not be served by his having to be haled into court in a state with which he has no connection, for a series of hearings designed for the administration of justice, when the court there has no personal jurisdiction over him. The Trust would not have been prejudiced by such a dismissal, as Mr. Kurgan is unaware of any statute of limitation issue that would bar a complaint properly filed and pled in the proper jurisdiction where the case could have been brought. (Docket No. 27, at ¶ 100) Mr. Kurgan therefore respectfully requests that this Court reverse the lower court's decision to deny his motion to transfer venue.

/ / /

/ / /

/ / /

## III.

## AS A MATTER OF FACT AND LAW, THE COURT ERRED WHEN IT PREVENTED MR. KURGAN FROM PROPOUNDING DISCOVERY AND THEN GRANTED SUMMARY JUDGMENT IN FAVOR OF THE TRUST

Even if this Court finds that *in personam* jurisdiction and venue were proper, here, the lower court erred, and greatly prejudiced Mr. Kurgan, by preventing him from doing *any* discovery to prove the existence of triable issues of material fact, in direct contravention of Federal Rule of Civil Procedure rule 56, and in contrast to the United States Supreme Court's holding in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In *Celotex*, the Supreme Court stated, "[i]n our view, the plain language of Rule 56(c) mandates the entry of summary judgment, *after adequate time for discovery* and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." 477 U.S. at 322 (emphasis added). Because the nonmoving party bears the burden of establishing that there is indeed a triable issue of material fact, the Supreme Court stated that, "Rule 56 . . . permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed . . . except the mere pleadings themselves, and *it is from this list that one would normally expect the nonmoving party to make the [appropriate] showing* . . . ." in establishing triable issues of material fact. *Id.* at 324 (emphasis

added). The list to which the Court referred was that articulated in Federal Rule of Civil Procedure rule 56(c), and includes "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

Indeed, as the Court in *Celotex* made clear, "Rule 56(e) . . . *requires* the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " 477 U.S. at 324 (emphasis added).

Decisions involving the grant of a motion for summary judgment based upon issues regarding discovery are to be reviewed under the abuse of discretion standard. *See, e.g., Panatronic USA*, 287 F.3d at 846 ("[a] district court abuses its discretion . . . if the movant diligently pursued its previous discovery opportunities, and if the movant can show how allowing additional discovery would have precluded summary judgment"). Based upon this standard, Mr. Kurgan respectfully requests that this Court reverse the lower court's decision granting the Trust's motion for summary judgment.

Here, Mr. Kurgan had set forth a plethora of affirmative defenses, as well as physical evidence which contradicts the inconsistent testimony of the Trust. (*See,*

*e.g.*, Docket No. 28)  However, the lower court deprived Mr. Kurgan of the right to conduct discovery in an effort to prove his assertions, regarding disputed facts, in opposition to the Trust's motion for summary judgment.  (Reporter's Transcript, Vol II, (hereinafter, "RT") 16:21; 17:17-18, 21-23; Docket No. 45)

In *Metabolife Int'l v. Wornick*, 264 F.3d 832 (9th Cir. 2001), the Court of Appeals for the Ninth Circuit held that Federal Rule of Civil Procedure rule 56(f) "facially gives judges the discretion to disallow discovery when the non-moving party cannot yet submit evidence supporting its opposition [however] the Supreme Court has restated the rule as *requiring*, rather than merely *permitting*, discovery 'where the nonmoving party has not had the opportunity to discover information . . . essential to its opposition.' " 264 F.3d at 846 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5 (1986), emphasis added).  There, the Court of Appeals for the Ninth Circuit arrived at the conclusion that a non-moving party to a Rule 56 motion must be allowed to conduct discovery in support of its opposition.[1]  Applying that analysis, the Court in *Metabolife Int'l* determined that, because a California anti-SLAPP motion resembles a summary judgment motion, its automatic stay upon discovery directly collided with Federal Rule of Civil

---

[1]  In arriving at this conclusion, the Court in *Metabolife Int'l* held that the procedural rules of California's Anti-SLAPP statute (which automatically stay discovery) created a conflict with federal procedural law.  Thus, the Court applied federal procedural law to the issues in that case.  *Metabolife Int'l v. Wornick,* 264 F.3d at 845 (citing *Walker v. Armco Steel Corp.,* 446 U.S. 740, 749-50 (1980).

Procedure rule 56, which requires discovery where the "nonmoving party has not had the opportunity to discover information that is essential to its opposition." *Id.*

Here, the lower court was faced directly with a summary judgment motion, and yet denied Mr. Kurgan the opportunity to conduct relevant discovery. In the instant matter, Mr. Kurgan was told that all he need do was to make a request to the court, and the court would open discovery. (RT-I, 10:23 – 11:5) Mr. Kurgan *did* attempt to make the request, in manner in which he had been instructed to do so (i.e., by placing a telephone call to the court clerk), but the clerk did not respond to the message which Mr. Kurgan left for the clerk.

Undaunted, however, Mr. Kurgan then made a *written request* (in his *Response in Opposition to [the Trust's] Motion To Strike*. (Docket No. 38, at ¶ 38) Additionally, during oral argument, Mr. Kurgan requested an opportunity to conduct discovery, and, again, the lower court effectively refused, in that it proceeded to rule in favor of the Trust, without giving further consideration to Mr. Kurgan's request. (RT-II, 16:21; 17:17-18, 21-23) The lower court erred in denying (or ignoring) these multiple requests. *See, e.g., Metabolife Int'l,* 264 F.3d at 846-847. Moreover, the lower court could not, as a matter of law, fairly find there were no disputed material facts, while tying Mr. Kurgan's hands by preventing him from proving the disputed facts in support of his counterclaims. *See id.*

*Mr. Kurgan was deprived of the opportunity to establish the following disputed material facts, and of the opportunity to obtain, via discovery, information that was essential to his opposition to the Trust's motion for summary judgment:*

## 1. Mr. Kurgan was denied the opportunity to prove that the lease was extended during the time that the aircraft was not airworthy.

The aircraft was delivered in a non-airworthy condition, which, by the terms of the Lease, extended the term of the Lease each time it was necessary to perform maintenance necessary to make the aircraft airworthy. (Docket No. 28, Exh. 1, at ¶¶ 3, 5; Docket No. 27, at ¶¶ 77, 79, 80, 111) Discovery would have proven the exact amount of time that should have been added to the lease, and further proven that Kurgan was not in breach.

## 2. Mr. Kurgan was deprived of discovery necessary to prove that the Trust concealed from him the true cost of repairs.

The "hot section" of the aircraft required overhauling, and Mr. Kurgan worried that the engine suffered what is known as a "hot start." If so, the aircraft's desirability would have been considerably reduced. The parties therefore agreed upon a cap for the cost of the "hot section" inspection, in the amount of $30,000.00. (Docket No. 28, Exh. 1) Mr. Kurgan believed that, if the cost exceeded that amount, then the aircraft would not be worth purchasing, and thus he would have immediately cancelled his intent to purchase. The Trust manipulated

the invoices so that the overhaul of the "hot section" was billed separately from the installation and removal, as originally estimated.

Whereas the Trust told Mr. Kurgan that the "hot section" cost did not exceed the $30,000.00 cap, the true facts were that the cost of removal and installation were paid via credit card by the Trust, and were not invoiced, so that the Trust could claim that the cost never exceeded the cancellation price. (Exhibits in Support of Motion for Summary Judgment, at Docket No. 29, Exh. 28) This constitutes fraudulent inducement, as Mr. Kurgan would have cancelled the agreement (Docket No. 27, Declaration of Michael Kurgan, at ¶ 14), and would have saved himself the following expenses: (a) the hangar/tie down fees, in the amount of $9,239.16 (Docket No. 29, Exh. 7); (b) the insurance fees, in the amount of $9,573.00 (Docket No. 29, Exh. 8); (c) the "hot section" cost, in the amount of $22,500.00 (Docket No. 29, Exhs. 1, 4, 5, 9); (d) the cost of repairs to make aircraft airworthy upon delivery, in the amount of $780.06 (Docket No. 29, Exh. 10); (e) the Lease payment, in the amount of $48,000.00 (Docket No. 29, Exh. 1); (f) a "Chart Database" subscription fee, in the amount of $1,965.00 (Docket No. 29, Exh. 16); and (g) additional maintenance expenses, in the amount of $8,489.61 (Docket No. 29, Exh. 17). (*See also* Docket No. 27, at ¶¶ 14, 85)

Deposition testimony from the parties to the overhaul of the hot section would have established its cost as a triable issue of material fact. In denying Mr.

Kurgan the opportunity to conduct such discovery, and in then ruling against him on the Trust's motion for summary judgment, the lower court abused its discretion.

**3. Mr. Kurgan was deprived of the opportunity to conduct discovery to prove that the Trust marketed and sold the aircraft during the Lease term.**

According to (second) Paragraph 5 of the Lease ("5. RIGHT TO SELL"), "During the Lease Term (herein defined as six months following delivery), the Owner shall not engage any third party to Purchase the Aircraft." (Docket No. 28, Exh. 1, at [second] ¶ 5). Mr. Kurgan required the opportunity to conduct discovery in order to prove that, during those six months, the Trust breached this provision and not only engaged a third party, but sold the aircraft to that third party, in breach of the terms of the Lease. Such discovery would have consisted of the depositions of the third party buyer, the broker, and the escrow agent, however, Mr. Kurgan was improperly denied the opportunity to acquire the information via deposition testimony.

**4. Mr. Kurgan was deprived of the discovery necessary to prove that the parties entered into an agreement to extend the lease in order to upgrade the autopilot and the avionics on the aircraft, and facts necessary establish that the Trust should have been estopped from asserting the expiration of the lease.**

A party asserting estoppel must plead facts giving rise to the claim of estoppel, demonstrating why the opposing party should not be permitted to avail itself of a particular position. Such facts include the behavior relied upon, reasonable reliance on the pleading party's part and a resulting change in position.

*Davidson v. Wyatt*, 289 Or. 47, 57; 609 P.2d 1298 (1980); *Consolidated Freightways v. Eddy*, 266 Or. 385, 396-397; 513 P.2d 1161 (1973); *Holmes v. Morgan*, 10 Or. App. 242, 248; 498 P.2d 830, rev. den. (1972); *Hess v. Seeger*, 641 P. 2d 23 (Or. Ct. App. 1982). Proof regarding each of these elements requires discovery.

Once the Addendum to the Lease was made, Mr. Kurgan's option to purchase the aircraft was extended. (Docket No. 28, Exhs. 1, 2) Further, Mr. Kurgan believed that, under the Addendum to the Lease (both of which were drafted by the Trust), it was fully anticipated that Mr. Kurgan would still have the opportunity to have both the annual and pre-buy inspection reports, before either accepting or rejecting his option to purchase the aircraft. The opportunity to make an informed decision reading whether to accept or reject the option to purchase the aircraft is the *precise purpose* for the pre-buy inspection.

Mr. Kurgan was entitled to believe, given the ongoing negotiations and the fact that the parties entered into an Addendum to the Lease, that he would have time to purchase the aircraft after the inspection was completed. The sale of the aircraft to the third party prevented this from occurring. As the holder of an option to purchase under a written agreement, Mr. Kurgan was entitled to assert a claim for specific performance, on a mixed waiver and estoppel theory, based upon the contention that the original date for the exercise of the option had been extended

40

by an oral agreement, especially given the $5,000.00 per month extra that Mr. Kurgan had paid as consideration for the option. (Docket No. 28, Exh. 1, at ¶ 6; Docket No. 27, at ¶ 101)

The $29,946.23 that Mr. Kurgan paid for the "hot section," and the other expenses that he paid, are expenses that a lessee of an aircraft would not otherwise pay in the absence of the option to purchase the aircraft. In this case, the extension to the Lease was in writing. (Docket No. 28, Exhs. 1, 2) Here, appropriate discovery would have enabled Mr. Kurgan to prove that, (a) the Trust breached the Lease first; (b) the aircraft was already sold to Enertron; (c) that Mr. Kurgan was entitled to assert his option to purchase when he did; and that (d) the extension of the option occurred at the time when the Addendum was signed, and that any deadlines in the original Lease agreement would not apply.

## 5. Mr. Kurgan was deprived of his right to prove that the pre-buy inspection was part of the Lease, and that, therefore, the option-to-purchase portion of the agreement was still in effect when the aircraft was sold to Enertron.

It is undisputed that the parties anticipated that there would be a pre-buy inspection, as part of the annual inspection. (Docket No. 28, Exh. 1, at ¶6a ["[a]s part of a purchase, the Lessee shall engage a mutually agreeable Maintenance Facility to perform an Annual Inspection as part of a <u>Pre Buy</u>."]) It is also undisputed fact that Mr. Kurgan engaged the mutually agreeable shop (i.e., Keystone Aviation) to perform that annual inspection as part of the pre-buy

inspection.  (Docket No. 27, at ¶ 100)  When the pre-buy inspection was completed and Mr. Kurgan attempted to exercise his option to purchase, he learned that the Trust had breached the agreement and had sold the plane to Enertron.

6. **Mr. Kurgan was deprived of discovery necessary to establish facts consistent with the email evidence that the Trust had concealed from him the existence of tax liens, and that the broker was instructed to keep this fact from him until after the lease was entered into.**

Mr. Kurgan required the opportunity to conduct discovery in order to prove significant concealment of a material fact, on the part of the Trust, relating to a tax lien which was claimed by the Trust to have been "bogus" (Docket No. 29, Exh. 23), and to brokerage fees which remained unpaid.  Significantly, the Trust concealed the existence of the lien until November, when it gave the broker permission to reveal its existence.  (Docket No. 29, Exh. 29)

Lance Neibauer, on behalf of the Trust, swore in his declaration that "I am unaware of any taxes or brokerage fees relating to the Aircraft that the Trust has failed to pay." (Docket No. 28, at ¶ 34)  Compare that sworn statement with the email of November 3, 2013 (after close of escrow) from the broker, Mr. Tim Brennan, stating, "[t]oday, Lance asked me to let you know that if you run a title search on the Aircraft, you will likely discover there is a lien on the plane.  This lien is due to unpaid taxes owed to Gwinnett County, GA." (Docket No. 28, Exh. 29)  The email then goes into detail, regarding the tax lien.  (Docket No. 28, Exh. 23 and 29)  That, in conjunction with the fact that the Trust claims the lien to have

42

been bogus, certainly shows knowledge. As further evidence that the affiant (Lance Neibauer) misled the court, he maintained that he was unaware of any brokerage fee that was unpaid. (Docket No. 28, at ¶ 34)

The Addendum to the Lease also tells a completely different story. There, the Trust, signed by Lance Neibauer, says, "3. L&L Trust agrees to pay the balance of Tim Brennan's commission to Tim Brennan." (Docket No. 28, Exh. 2) Again, the sworn testimony of Lance Neibauer, on behalf of the Trust, is misleading, at best. This Addendum was made on December 12th, 2013, after close of escrow, and certainly after the commission (and tax liens) should have been paid. (Docket No. 28, Exh. 2) Had discovery been permitted by the lower court, Mr. Kurgan could have obtained further incontrovertible proof of the fraudulent concealment that is clearly evident from the documentation.

### 7. Mr. Kurgan's performance was excused by the fraud and prior breach by the Trust.

Mr. Kurgan's difficulties with the Trust started with the hot-section fraud and continued with (a) the delivery of a non-airworthy aircraft; (b) concealment of the tax lien; (c) refusal to pay the broker's commission, and then lying about knowledge of its existence; (d) demand to pay $10,000.00 out of escrow, when the Trust already had Enertron as a buyer; and (e) false and misleading testimony regarding the $20,000.00 purportedly incurred in legal fees by the third-party buyer

(Enertron) in drafting *a two page indemnity agreement*, as a scheme to extort funds from Mr. Kurgan.  (Docket No. 29, Exh. 18)

Furthermore, the lien on the aircraft existed as late as April 1st, 2014 in the amount of $16,953.53.  (Docket No. 29, Exh. 31 [email from broker Tim Brennan to Mr. Kurgan, dated April 1, 2014, providing details regarding the lien]) Mr. Kurgan simply does not believe that the Trust ever intended to convey the aircraft with clear title.  Discovery would have provided the proof essential to Mr. Kurgan's contentions in this regard, and in opposition to the Trust's Rule 56 motion for summary judgment.

**8.  The Trust fraudulently demanded Mr. Kurgan wire $10,000.00 directly to the Trust, even though the Trust knew that the aircraft had already been sold to a third party buyer at the time of the demand.**

Even after the Trust had contracted with Enertron (Docket No. 28, Exh. 10), Mr. Neibauer emailed Mr. Kurgan, asking him to wire $10,000.00 directly to the Trust, instead of going through escrow as required by Paragraph 2 of the Addendum. (Docket No. 29, Exh. 23; Docket No. 28, Exh. 2)  This demand came after the third party purchase agreement was already in place.  It is abundantly evident that the Trust never intended to perform under the sale agreement, and would have kept the $10,000.00 had it been wired directly to the Trust.  The annual inspection was never completed, and Mr. Kurgan was only provided with a pre-annual inspection invoice.  Again, the opportunity to conduct depositions might

have assisted Mr. Kurgan in establishing that, here, there were triable issues of material fact.

## 9. Discovery would have proven that the invoice Mr. Kurgan received was not for a completed inspection, but, rather, an estimate.

Discovery would have also proven that the pre-buy inspection was designed to identify all "squawks," in order to give Mr. Kurgan an opportunity to decide whether or not he wanted to buy the airplane, and the true reason for reducing the purchase price of the aircraft by $20,000.00.[2] The pre-annual inspection only listed approximately $13,000.00 worth of items that needed to be corrected. After the annual inspection was finally completed, and during the pre-buy inspection, however, there were actually $60,004.83 worth of items revealed by the shop that performed the pre-buy inspection for Enertron. (Docket No. 29, Exh. 20) This, in fact, was actually the reason why the Trust reduced Enertron's purchase price. Discovery would have afforded Mr. Kurgan an opportunity to bring these facts out into the light, in support of his opposition to the Trust's Rule 56 motion for summary judgment.

/ / /

/ / /

/ / /

---

[2] "Squawk" is an aviation term meaning an item that has been red-flagged as being not in compliance with regulations.

**10. Had the court permitted discovery, the broker, Mr. Tim Brennan, would likely have testified as to his belief that Mr. Kurgan had the right to exercise his right to purchase the aircraft; that he had encouraged the Trust not to cheat Mr. Kurgan; that Mr. Kurgan did not interfere with the third party purchase; and as to when and how the aircraft was marketed during the term of the agreement.**

Had Mr. Kurgan been permitted to depose Mr. Tim Brennan (the broker for the Trust who sold the aircraft to Enertron), and to depose Enertron, they would likely have testified to the following important facts that were overlooked by the lower court due to the court's failure to permit discovery:

(1) Both Enertron and Mr. Brennan would likely have testified that Mr. Kurgan did not interfere with the sale of the aircraft, because, to begin with, Enertron would have testified as to (a) when it entered into the agreement to purchase the plane out from under Mr. Kurgan; (b) the date upon which it learned about the aircraft for sale; (c) how it learned about the aircraft for sale; (c) from whom it learned the aircraft was for sale; and (d) whether or not the effective date (i.e., February 10th, 2014 [*see* Docket No. 28, Exh. 2]) on the contract was a mistake, and why the parties placed that date on the third party purchase agreement; and, (e) that the true reason for the discount on the aircraft was the fact that there were $60,000.00 in "squawks," and not because of anything having to do with Mr. Kurgan.

(2) Mr. Brennan would have testified as to the facts that (a) the aircraft was advertised for sale during the lease period; (b) the aircraft was sold during the lease

46

period; (c) Mr. Brennan had told the Trust that Mr. Kurgan had the right to purchase the aircraft and exercise the option (and even warned the Trust not to cheat Mr. Kurgan, as Mr. Kurgan's rights were violated by the sale to the third party); and (d) Mr. Brennan had stated there was a lot of information he could not provide, but would provide if placed under oath, as the Trust had imposed a confidentiality clause upon him.

(3) Similarly, the escrow company's testimony, had they been permitted to be deposed, would have provided vital information as to (a) when the Enertron contract was entered into and when any of the funds were deposited by Enertron into escrow; (b) what funds were placed into escrow by Mr. Kurgan and when; and (c) how those funds were used.

(4) Mr. Kurgan required the testimony of the purchaser of the aircraft, Enertron, Inc. in order to prove that Mr. Kurgan did not interfere with the purchase (in fact Mr. Kurgan actually mentored the purchaser for twenty-five hours worth of dual flight time so that the purchaser would be qualified to fly the aircraft).

(5) Mr. Kurgan also required the testimony of the mechanic who was to perform the auto pilot upgrade that Mr. Kurgan had agreed to pay for (an upgrade which proved to be impossible, because the Primary Flight Display of the aircraft needed upgrading first, and the Trust refused to pay for that upgrade, which resulted in (a) the parties agreeing that the upgrade was not necessary and (b) the

extension of the lease agreement becoming, in part, moot, thus leaving the option to exercise the purchase the remaining issue.

(6) The California avionics shop mechanics from Neal Aviation would have testified that they had to rewire the radios aboard the aircraft, because the radios did not comply with the Federal STC (making the aircraft non-airworthy). This was also the same shop that quoted the avionics autopilot installation price. Neal Aviation would have additionally testified that the aircraft originally arrived in a non-airworthy condition.

All of the aforementioned testimony would have gone to the issue as to whether or not there were triable issues of material fact at play in the litigation between the Trust and Mr. Kurgan, and yet, Mr. Kurgan was improperly denied the opportunity to obtain such testimony, by the lower court in the instant matter.

## 11. Proper discovery would have allowed Mr. Kurgan to establish that the term of the lease period, and the term of the option to purchase the aircraft as material disputed facts.

In the instant matter, even the term of the right to use the aircraft, versus the option-to-purchase periods are plainly in dispute, and therefore constitute triable issues of material fact. Where, as here, facts are in dispute and subject to proof at trial, a court may not grant a Rule 56 motion. On review, an appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district

48

court correctly applied the relevant substantive law. *See Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 922 (9th Cir. 2004). Here, the lower court erred in granting the Trust's Rule 56 motion, in light of the abundance of such disputed issues.

In regard to the lease period and the option to purchase, Mr. Kurgan argued that there are basically two parts to the lease agreement: (1) the time during which he was entitled to use the aircraft, and (2) the all-encompassing lease-period, which includes the hot-section, prior to use, the use-period itself (which was supposed to be extended by the amount of time that the aircraft was not airworthy while Mr. Kurgan was in possession of the aircraft), and the ending period, during which the aircraft was to be brought in for an annual inspection that Mr. Kurgan intended to use as a pre-purchase inspection. Mr. Kurgan notified the Trust of his intention to purchase the aircraft within a reasonable time, as that notification occurred only one day after the date upon which the aircraft was sold (unbeknownst to Mr. Kurgan, a the time) to Enertron.

/ / /

/ / /

/ / /

/ / /

/ / /

49

## IV.

## THE COURT ERRED IN REFUSING TO STRIKE THE TRUST'S CLAIM FOR INTERFERENCE, PURSUANT TO OREGON'S ANTI-SLAPP LEGISLATION, OR ALTERNATIVELY, ON THE BASIS THAT MR. KURGAN'S COMMUNICATIONS WERE PRIVILEGED

A complaint containing a built-in defense is subject to a motion to dismiss for failure to state a claim. 5 FEDERAL PRACTICE AND PROCEDURE §1226, at 207–209; *see also, Suckow Borax Mines Consol. v. Borax Consolidated,* 185 F.2d 196, 204 (9th Cir. 1950), *cert. denied,* 340 U.S. 943 (1951). Oregon Revised Statute section 31.150 (2) (i.e., Oregon's Anti-SLAPP legislation) permits a defendant to make a special motion to strike "against any claim in a civil action that arises out of:

(a) Any oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding authorized by law;

(b) Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law;

(c) Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or

(d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

A special motion to strike is to be treated as motion to dismiss under Oregon Revised Statute 21(A), and incorporates the requirement that the motion be filed

before any responsive pleading. *Horton v. Western Protector Insurance Co.*, 217
Or.App. 443, 176 P.3d 419 (2008).

The applicable standard for review pertaining to this issue is the abuse of
discretion standard. *United States v. $133,420.00 in U.S. Currency*, 672 F.3d at
637; *Hambleton Bros. Lumber Co. v. Balkin Enterprises Inc.,* 397 F.3d at 1224 n.
4. Based upon this standard, Mr. Kurgan respectfully requests that this Court
reverse the lower court's decision in favor of the Trust.

Here, the conduct complained of by the Trust in the First Cause of Action of
the Complaint in the instant matter is that "Defendant wrongfully interfered with
Trust's contract to sell the aircraft by improper means, including: (1) wrongfully
asserting an option to purchase the aircraft after the option terminated; (2)
threatening to file a frivolous lawsuit to assert an option to purchase the aircraft
after the Lease and the option expired; (3) demanding payment when no money
was owed to defendant to avoid the improper claim to cloud title to the aircraft;
and (4) asserting to the Federal Aviation Administration that the Lease and the
Addendum to the Lease were in effect as of April 25, 2014, after the Lease and the
Addendum had expired." (Docket No. 11, Exh. 5, at 5:7-14)

It is, however, a matter of public record that Mr. Kurgan had in fact filed a
lawsuit against the Trust in federal court in California, in addition to his having
filed the lease with the FAA. (Docket No. 24, Exh. 2; Docket No. 28, Exh. 12)

Additionally, although that lawsuit was dismissed for lack of in personam jurisdiction, by the District Court of California, there is no indication anywhere in the record (and certainly not in that Judgment itself, in that matter) that that lawsuit was considered to have been "frivolous" by the California District Court. (Docket No. 24, Exh. 2)  In fact, there, even the District Court in California recognized that there were potentially significant issues to be adjudicated (assuming that that occurred before a court of proper jurisdiction), and postulated that the Trust would have been in breach, were it proven that the aircraft was advertised during the lease period. (*See* Docket No. 24, Exh. No. 2, at p. 5, lns. 9-11 ["If that's true, it may well have been a violation of the lease, which stipulated that, during the entire six-month term, '*the Owner shall not engage any third party to Purchase the Aircraft.*' (Lease ¶ 5)"])

The Complaint further falsely alleges that Mr. Kurgan's interference "directly prevented the Trust from closing the sale of the aircraft, and therefore caused economic damages…" (Docket No. 11, Exh. 5, at 5:16-17)  In fact, however, it is undisputed by the Trust that the sale did proceed, and was closed. (Docket No. 28, Exh. 10)  Moreover, an email from Mr. Kurgan to Enertron, and to the broker, Mr. Tim Brennan, clearly shows no intention to interfere. (Docket No. 29, Exh. 30)

All statements made by Mr. Kurgan to Enertron, and the conduct of filing a lease with the FAA solely as a clerical or ministerial matter in order to protect his interests in the aircraft (which the Trust claims were improper) were so made in the course of not just one, but two pending judicial proceedings, as well as a quasi-legislative proceeding through the FAA (informing that agency of the existence of the lease). *Thus all comments made by Mr. Kurgan to Enertron, alerting that entity to the existence of the lawsuit that is now here on appeal, were absolutely privileged, and Mr. Kurgan was therefore properly to be considered immune from suit for tortious interference.* *Erlandson v. Pullen*, 608 P.2d 1169 (Or. Ct. App. 1980); *Brown v. Gatti*, 99 P.3d 299 (2004) (review pending on other issues), and *Mantia v. Hanson*, 79 P.3d 404 (2003).

To qualify for the privilege, a statement must meet two general tests: first, it must have "some reference to the subject matter of the pending litigation." *Brown*, 99 P.3d at 304 (internal quotation marks and citations omitted). The intent behind this requirement is that the privilege is designed to protect a party's First Amendment rights to free speech. *Id.* From the email to the buyer, it is obvious that Mr. Kurgan's communications clearly were related to the pending actions taken by him.

Second, the statement must be made "'in connection with a judicial proceeding.'" *Brown,* 99 P.3d at 304. It is indisputable from the Complaint filed

by the Trust, and from the affidavit of Mr. Kurgan, as well as the exhibits, that the statements were inextricably connected to the judicial proceedings. In fact, a "hold harmless agreement" was drafted by the parties that referred specifically to the litigation, and to the lease that was filed with the FAA. (Declaration of Michael Kurgan in Support of Motion to Dismiss for Lack of Personal Jurisdiction, Docket No. 16, at ¶ 91)

The requirement that the statement must be made in connection with a judicial proceeding clearly applies to statements made in pleadings, briefs, correspondence between opposing lawyers, interested parties, witnesses, and to statements made in the courtroom. *Brown*, 99 P3d at 304. But it also extends to statements, such as settlement demands, that are made prior to formal proceedings being instituted. *Id.*

The statements claimed here by the Trust as interference with the buyer are clearly privileged, and Mr. Kurgan is therefore absolutely immune.[3] It is irrefutable that, here, any communications between Mr. Kurgan and Enertron were absolutely privileged (as demonstrated, *supra*) and absolutely protected speech,

---

[3] The absolute immunity attaches to statements made in the course of, or incident to a judicial proceeding. *McKinney v. Cooper*, 98 P.2d 711 (1940), (objections to estate accounting); *Irwin v. Ashurst*, 74 P.2d 1127 (1938), (judge and counsel); *Pitts v. King*, 15 P.2d 379, 472 (1932), (pleadings). Statements made before various administrative boards and commissions have also been recognized as absolutely privileged. *See, e.g.*, *Duncan v. Atchison, T. & S.F.R. Co.*, 72 F. 808 (9th Cir. 1896) (pleading before Interstate Commerce Commission).

pursuant to the Anti-Slapp provisions of the Oregon Code. The First Cause of Action should thus have been stricken, and, in failing to do so, the lower court abused its discretion.

## V.

### THE COURT ERRED IN REFUSING TO FIND THAT THE TRUST BREACHED THE AGREEMENT BY ADVERTISING AND AGREEING TO SELL THE AIRPLANE DURING THE TERM OF THE LEASE

The Trust, in direct violation of the terms of the Lease (which contained an option for Mr. Kurgan to purchase the aircraft, and specifically contained a provision prohibiting the sale of the aircraft to a third-party buyer [*see* Docket No. 28, Exh. 1, at ¶¶ 5, 6]), continued to advertise, and actually sold, the aircraft, in February of 2014, *during the initial term of the Lease option* (*see* Docket No. 28, Exh. 2; Docket No. 27, at ¶ 83; Docket No. 29, Exh. 19). Here, the lower court, instead of viewing the facts in the light most favorable to the non-moving party[4] (i.e., Mr. Kurgan), accepted the Trust's argument that the date the Trust and Enertron specifically put into the purchase agreement was a "mistake," and utterly

---

[4] Inferences must also be drawn in the light most favorable to the nonmoving party. *See, e.g., Anderson v. Liberty Lobby, Inc.* 477 U.S. at 247-252; *Matsushita v. Zenith Radio Corp.,* 106 S.Ct. 1356, 1356-57 (1986). Inferences may be drawn from underlying facts that are not in dispute, such as background or contextual facts, and from underlying facts on which there is conflicting direct evidence but which the judge must assume may be resolved at trial in favor of the non-moving party. *See, e.g., id.* at 1356.

ignored the fact that this was the *second* buyer for the aircraft during the term of the Lease. In so doing, the lower court granted the Trust's motion for summary judgment, in error. The applicable standard of review pertaining to this issue is the de novo standard. *Szajer*, 632 F.3d at 610; *Universal Health Servs., Inc*, 363 F.3d at 1019. Based upon this standard, Mr. Kurgan respectfully requests that this Court reverse the lower court's decision granting the Trust's motion for summary judgment.

Even the Court in California (where Mr. Kurgan had attempted to sue the Trust for breach of the Lease agreement, but where jurisdiction was held to have been lacking) recognized this to be a significant issue, and postulated that the Trust would be in breach when it was proven that the aircraft was advertised during this lease period. (Docket No. 24, Exhibit No. 2, at p. 5, lns. 9-11 ["If that's true, it may well have been a violation of the lease, which stipulated that, during the entire six-month term, '*the Owner shall not engage any third party to Purchase the Aircraft*.' (Lease ¶ 5)"])

Even the fact that it the agreement for sale was signed in April does not prove that the Lease was not breached in February when the aircraft clearly was improperly marketed for sale, during the time that Kurgan held the exclusive right to purchase the aircraft (especially since there was not just one, but two different third party buyers that surfaced during the agreement period). (Docket No. 28,

Exh. 10) By then, Mr. Kurgan had invested substantial sums in the aircraft, in the aggregate sum of $100,546.83. (*See* discussion, Section III-2, *supra*, at p. 38; Docket No. 29, Exhs. 1, 4, 5, 7, 8, 9, 10, 16, 17; s*ee also* Docket No. 27, at ¶¶ 14, 85)

Clearly, Mr. Kurgan would not have invested so much into this aircraft, had he known that it was going to be sold out from under him (moreover, this does not even include the lost opportunity for Mr. Kurgan to *resell* the aircraft to his *own* buyer at a substantial profit, at some later date). The Trust, via Mr. Neibauer's own Declaration, stated that he would have put the aircraft back on the market and not sold it for less than $825,000.00 (Docket No. 28, at ¶ 24) Mr. Kurgan's purchase price pursuant to the Lease, however, was $55,000.00 less than that amount, and Mr. Kurgan has thus been deprived of the loss of that amount (i.e., the benefit of his bargain). Here, the lower court should have attempted to discern the essential purpose of the remedy when it was first agreed upon by the parties. *See, e.g.*, *Held v. Mitsubishi Aircraft Int'l,* 672 F.Supp. 369, 382 (D. Minn. 1987) (noting that a court should "first determine what the bargain was before deciding whether any party has been deprived of it"); UCC § 2-719 et seq.

/ / /

/ / /

/ / /

57

# VI.

## AS A MATTER OF FACT AND LAW, THE COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO STRIKE THE CLAIM FOR ATTORNEYS' FEES

Oregon law clearly allows attorneys' fees to the prevailing party on either trial or appeal *only* in the event that the contract specifically provides for allowance of attorney fees to either party on either trial or appeal. *McMillan v. Golden*, 497 P.2d 1166 (1972); Or. Rev. Stat. § 20.096 ("Reciprocity of attorney fees and costs in proceedings to enforce contract") As the Oregon Code of Civil Procedure makes clear:

> [i]n any action or suit in which a claim is made based on a contract *that specifically provides that attorney fees and costs incurred to enforce the provisions of the contract shall be awarded to one of the parties*, the party that prevails on the claim shall be entitled to reasonable attorney fees . . . .

Or. Rev. Stat. § 20.096 (emphasis added)

Although it represents a clever attempt, on the part of the Trust, here, the purported indemnity clause for damages was never contemplated by Mr. Kurgan, nor were such clauses contemplated by the Legislature as a proper means, in general, for a plaintiff to seek to recover attorneys' fees. Here, the lower court mistakenly denied Mr. Kurgan's motion to strike the Trust's claim for attorney's fees, and (to a limited extent) awarded attorney's fees to the Trust. The applicable standard of review pertaining to this issue is the abuse of discretion standard.

*United States v. $133,420.00 in U.S. Currency*, 672 F.3d at 637; *Hambleton Bros. Lumber Co. v. Balkin Enterprises Inc.,* 397 F.3d at 1224 n. 4. Based upon this standard, Mr. Kurgan respectfully requests that this Court reverse the lower court's decision in favor of the Trust.

Here the Complaint alleges "[a]dditionally, plaintiff is entitled to its reasonable attorneys' fees and costs pursuant to the Indemnity Agreement whereby defendant agreed to hold The Trust harmless from any loss arising out of the aircraft." (Docket No. 11, Exh. 5, at 5:23-25) No mention whatsoever is made regarding attorney's fees in the hold harmless agreement, however, and the claim itself does not arise out of the aircraft, but is apparently solely related to alleged interference with contract. (Docket No. 16, at ¶ 91)

Here, the connection to the aircraft itself is tenuous, at best, and the agreement certainly does not specifically provide that attorney fees and costs incurred to enforce the provisions of the contract shall be awarded to one of the parties. (Docket No. 16, at ¶ 91) Mr. Kurgan did not contemplate that he would be held liable for attorneys' fees and costs resulting from this dispute (Docket No. 16, at ¶ 99), and there simply was no interference which entitles the Trust to attorneys' fees and costs.

In fact, the actual award for attorneys' fees (in the amount of $26,422.16) was a part of the award to the Trust on its breach of contract claim, in the total

amount of $46,730.36 (Docket No. 45), and was based upon the California District Court's dismissal for lack of personal jurisdiction, apparently under the rationale that the bringing of that lawsuit constituted "interference" with the Trust's (incidentally improper) relations with its third-party buyer. (Plaintiff's Motion for Summary Judgment, Docket No. 22, at pp. 5-6; Docket No. 45)

However, the California action was privileged, and California has an attorneys' fee provision similar to that of Oregon, preventing the recovery of fees unless there exists an express agreement. Cal. Civ. Proc. Code § 1021. *Indeed, the Trust did not even make a motion for attorney's fees in California, because it knew that such an award was not proper.* Bootstrapping the request here is no more proper than it would have been in the California litigation, and, for the lower court to have denied Mr. Kurgan's motion to strike the Trust's claim for its attorney's fees for having had to defend itself in the California lawsuit was an abuse of discretion. Thus, Mr. Kurgan respectfully requests that this Court reverse the lower court's decision regarding the award of attorney's fees to the Trust.

/ / /

/ / /

/ / /

/ / /

/ / /

# VII.

# CONCLUSION

For all of the reasons stated herein, Defendant/Appellant Mr. Michael Kurgan respectfully requests that this Court *reverse* the lower court's denials of Mr. Kurgan's motions in the instant matter, as well as the lower court's grant of summary judgment in favor of the Trust.

# STATEMENT OF RELATED CASES

There are no known related cases pending before this Court.

Respectfully Submitted, this 26th Day of August, 2015

/s/_____

MICHAEL J. KURGAN
Defendant / Appellant Pro Se
6538 Collins Avenue
Unit 288
Miami Beach, FL 33141
Phone 305 496-8555
E-Mail mike@servicewing.com

## CERTIFICATE OF COMPLIANCE PURSUANT TO
## FED. R. APP. P. 32(A)(7)(C) AND CIRCUIT RULE 32-1

Case Name: *NEIBAUER JOINT TRUST, et al. v. MICHAEL J. KURGAN*
No. **15-35050**

I certify that:

Pursuant to Fed. R. App. P. 32 (a)(7)(C) and Ninth Circuit Rule 32-1,

the attached opening brief is Proportionately spaced, has a typeface of 14 points or

more and contains **13,909** words.

**or is**

__ Monospaced, has 10.5 or fewer characters per inch and contains _____ words

or _____ lines of text (opening, answering, and the second and third briefs filed

in cross-appeals must not exceed 14,000 words or 1,300 lines of text; reply briefs

must not exceed 7,000 words or 650 lines of text).

__ 2. The attached brief is **not** subject to the type-volume limitations of Fed.

R. App. P. 32(a)(7)(B) because

__ This brief complies with Fed. R. App. P. 32(a)(1)-(7) and is a principal brief of

no more than 30 pages or a reply brief of no more than 15 pages;

__ This brief complies with a page or size-volume limitation established by

separate court order dated _____ and is

__ Proportionately spaced, has a typeface of 14 points or more and contains

_____ words,

**or is**

__ Monospaced, has 10.5 or fewer characters per inch and contains _____ pages

or_____ words or _____ lines of text.

__ 3. Briefs in Capital Cases

__ This brief is being filed in a capital case pursuant to the type-volume limitations

set forth at Circuit Rule 32-4 and is

__ Proportionately spaced, has a typeface of 14 points or more and contains

_____ words (opening, answering, and the second and third briefs filed in

cross-appeals must not exceed 21,000 words; reply briefs must not exceed 9,800

words)

or is

__ Monospaced, has 10.5 or fewer characters per inch and contains _____ words

or _____ lines of text (opening, answering, and the second and third briefs filed

in cross-appeals must not exceed 75 pages or 1,950 lines of text; reply briefs must

not exceed 35 pages or 910 lines of text).

_____ 4. Amicus Briefs

_____ Pursuant to Fed. R. App. P. 29(d) and 9th Cir. R. 32-1, the attached amicus

brief is proportionally spaced, has a typeface of 14 points or more and contains

7000 words or less,

or is

__ Monospaced, has 10.5 or fewer characters per inch and contains not more than either 7000 words or 650 lines of text,

or is

__ Not subject to the type-volume limitations because it is an amicus brief of no more than 15 pages and complies with Fed. R. App. P. 32(a)(1)(5).

Dated: August 26, 2015

_____
MICHAEL J. KURGAN
6538 Collins Avenue
Unit 288
Miami Beach, FL 33141
Phone 305 496-8555
E-Mail mike@servicewing.com

## CERTIFICATE OF SERVICE

Case Name: ***NEIBAUER JOINT TRUST, et al. v. MICHAEL J. KURGAN***
No. **15-35050**
I certify that on August 26, 2015, a true and correct copy of the foregoing was served by means of US mail and email:

**APPELLANTS' OPENING BRIEF**

**On:**
MARKOWITZ, HERBOLD, GLAD & MEHLHAF, P.C.
Lisa A. Kaner
Suite 3000 Pacwest Center
1211 SW Fifth Avenue
Portland, Oregon 97204-3730
Tel: 503 295-3085
Fax: 503 323-9105
Email: LisaKaner@MHGM.com


Dated:  August 26, 2015


_____
MICHAEL J. KURGAN
6538 Collins Avenue
Unit 288
Miami Beach, FL 33141
Phone 305 496-8555
E-Mail mike@servicewing.com